#### IN THE UNITED STATES DISTRICT COURT
#### FOR THE NORTHERN DISTRICT OF OKLAHOMA

| | |
|---|---|
| JO LIETA BRIGHT, an individual, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | Case No. 11-CV-475-GKF-FHM |
| ) | |
| OHIO NATIONAL LIFE ASSURANCE ) | |
| CORPORATION, ) | |
| ) | |
| Defendant. ) | |

### OPINION AND ORDER

This matter comes before the court on defendant Ohio National's Motion to Exclude and/or Limit the Testimony of Michael Quinn. (Dkt. #91). Plaintiff Gavin Bright offers Quinn as an expert on bad faith insurance claims. Quinn provided a timely expert report. Ohio National asserts that (1) Quinn lacks the necessary qualifications to provide expert testimony on bad faith insurance claims; (2) Quinn's proffered opinions are unreliable and based primarily upon personal opinions; (3) Quinn's testimony consists of inadmissible legal opinions concerning contract interpretation and the application of Oklahoma law to alleged facts; and (4) Quinn's opinions are speculative and conclusory statements about Ohio National's alleged intent and motives. (Dkt. #91 at 7).

### I. Standard

Rule 702 of the Federal Rules of Evidence provides:

> If scientific, technical, or other specialized knowledge will assist the trier of fact to understand the evidence or to determine a fact in issue, a witness qualified as an expert by knowledge, skill, experience, training, or education, may testify thereto in the form of an opinion or otherwise, if (1) the testimony is based upon sufficient facts or data, (2) the testimony is the product of reliable principles and methods, and (3) the witness has applied the principles and methods reliably to the facts of the case.

When an objection to an expert's testimony is raised, the court must perform *Daubert* gatekeeper duties before the jury is permitted to hear the evidence. *Daubert v. Merrell Dow Pharmaceuticals, Inc.*, 509 U.S. 579, 589 (1993); *Kumbo Tire Co., Ltd. v. Carmichael*, 526 U.S. 137, 149 (1999). A trial court's gatekeeper duty requires two separate inquiries: (1) the witness must be qualified to offer the opinions he is espousing and (2) the proponent of the witness bears the burden of proving by a preponderance of the evidence that its witness's opinions are both relevant and reliable. *Kumbo Tire*, 526 U.S. at 141, 152.

Expert testimony is admissible if four conditions are met: (1) it is helpful to the trier of fact, (2) it is based on sufficient facts, (3) it is the product of reliable principles and methods, and (4) the expert reliably applied the principles and methods to the case. The court's inquiry is "a flexible one" but "[t]he focus, of course, must be solely on principles and methodology, not on the conclusions that they generate." *Daubert,* 509 U.S. at 594-95. "At a minimum, [the expert] should describe the method he used in reaching, and the data supporting, his determination. The Court cannot rely on an expert's mere assurance that the methodology and data are reliable." *Alexander v. Smith & Nephew*, P.L.C., 98 F. Supp. 2d 1287, 1293 (N.D. Okla. 2000).

## II. Analysis

Quinn is qualified to provide expert opinion on insurance matters. But the court finds his lack of experience concerning Oklahoma disability insurance claims, his unreliable methodology, and his tendency to provide legal conclusions and speculation rather than helpful testimony regarding industry standards require his report and testimony be excluded.

### A. Qualifications

The court must determine whether Quinn is qualified by "knowledge, skill, experience, training or education" to render his opinions. Fed. R. Evid. 702; *Ralston v. Smith & Nephew Richards, Inc.*, 275 F.3d 965, 969 (10th Cir. 2001). Whether Quinn is qualified depends heavily

on the characterization of the issue being discussed. Quinn's experience handling insurance litigation qualify him as an expert generally. However, the vast majority of his experience concern property-casualty insurance and attorney negligence and malpractice. Quinn does not have an expertise in disability insurance claim handling. Quinn explains that his knowledge of generalized insurance standards qualifies him to provide testimony here because the standards are uniform, although he admits "the kinds of things you're going to investigate would be different" in disability insurance cases. (Dkt. #91-2 at 21:3-4).

Quinn's experience and education is sufficient to qualify as an expert in insurance claim handling. Quinn's lack of experience with disability insurance could be explored during cross-examination to attack his credibility if Quinn were allowed to testify. Quinn's inexperience also affects the reliability of his methodologies, as discussed below. But he is not disqualified from testifying based on his applicable experience.

### B. Reliability of Methodology and Helpfulness to Jury

Quinn's proffered testimony is unreliable and unhelpful to the jury. First, a jury is capable of determining "the bad faith issue on its own." *City of Hobbs v. Hartford Fire Ins. Co.*, 162 F.3d 576, 586-87 (10th Cir. 1998). While expert testimony may be helpful in bad faith cases, it is not necessary. For example, Quinn asserts – based on "practical wisdom" – that the "industry standard" requires training be based on the state law of the state where the claims handling is done because. (Dkt. #91-2 at 49:4-5). If only practical wisdom is needed to understand the industry standard, the jury needs no assistance from an expert. Additionally, Quinn opines on the meaning of specific disability policy terms based solely on the language of the policy, not from any expertise in disability insurance. (Dkt. #91-2 at 53:6-14). The jury does not need an expert to read the language of the policy.

Second, Quinn's lack of significant experience handling bad faith claims under disability policies makes his testimony less helpful. Generalized knowledge of insurance disputes does not cure the lack of specialized knowledge of "[Oklahoma] bad faith cases." *City of Hobbs*, 162 F.3d at 587. Quinn has not participated in a social security disability proceeding, (Dkt. #91-2 at 174:23-175:1), and bases his opinions primarily on his experience in other insurance contexts. "Though a proffered expert possesses knowledge as to a general field, the expert who lacks specific knowledge does not necessarily assist the jury." *City of Hobbs*, 162 F.3d at 587; *Broadcort Capital Corp. v. Summa Medical Corp.,* 972 F.2d 1183, 1195 (10th Cir. 1992).

Third, perhaps due to his inexperience in bad faith disability insurance claim handling, Quinn's methodology is wholly unreliable. A reliable methodology would be to describe industry standards and then apply them to the facts at hand. But Quinn provides no reassurance that he knows the industry standards concerning bad faith in Oklahoma. His knowledge of Oklahoma law derives solely from plaintiff's counsel's characterization and cases sent to Quinn from plaintiff's counsel. (Dkt. #91-2 at 22:16-24:5). And Quinn's methodology consists of inferring that disability insurance is the same or similar to other insurance contexts. *See id.* at 87:20-22 ("If that is done, for example, in health insurance, or all other kinds of insurance, it is fair to infer that disability does the same sort of thing."); 79:7-10 ("Q. And is that based upon your experience in relating to the issuance of disability insurance policies? A. Insurance is insurance, and it is my experience across the board with all insurance."). And at times, rather than consistently rely on other insurance contexts, Quinn relies solely on his own predilections. *See id.* at 170:12-17 ("Q. And is that statement… based on your experience with insurers who have issued disability insurance policies… A. No. It's based on common sense."); *id.* at 49:4-5

(basing opinion on "practical wisdom"). Quinn fails to show his opinions are based on a reliable methodology.

Fourth, Quinn makes numerous conclusory statements of law. "We must also consider, however, whether the expert encroached upon the trial court's authority to instruct the jury on the applicable law, for it is axiomatic that the judge is the sole arbiter of the law and its applicability." *Specht v. Jensen*, 853 F.2d 805, 807 (10th Cir. 1988). Quinn's conclusory statements of law include:

- Oklahoma's legal definition of "disability" requires an occupation "be one 'at least comparable in dignity, permanency, and renumeration [sic].'" (Dkt. #91-1 at 8).

- "The fact that there are two policies itself is an extraordinary phenomenon, itself is fraud, and overlaps into claims handling bad faith…" (*Id.* at 10).

- "Adjusters are required to read and understand the policies they adjust, and failing to do so on a matter this obvious and dangerous can be nothing but reckless and/or extraordinarily incompetent, if not outwardly fraudulent." (*Id.*)

- "'Able to work' implies employability where ability 'to perform the substantial and material duties' does not include the employability component." (*Id.*)

- Oklahoma's Unfair Claims Settlement Practices Act "would be considered the 'code of conduct' for any insurer doing business in Oklahoma," and failure to train employees on Oklahoma law is a "flagrant violation of Ohio National's duties." (*Id.* at 12-13).

- "Dr. Bright had previously been determined by the Social Security Administration to be disabled under a definition of disability more restrictive than that in the policy." (*Id.* at 15).

- "If Bright is disabled under a Social Security definition, she is disabled under either Ohio National definition." (*Id.*)

- "The social security definition of disability is more strict than Ohio National's." (*Id.* at 16).

- "It was obviously reckless and in many respects obviously intentional." (*Id.*)

- "[T]he claim is obviously payable." (*Id.* at 18).

- "Ohio National's conduct has been, and is now, unconscionable." (*Id.*)

In his deposition, Quinn also opined about the controlling Oklahoma law. *See* Dkt. #91-2 at 22:1-15 (stating Oklahoma law applied to the policy here "requires dignity, it requires permanency, and it requires similar remuneration"); *id.* at 33:23-34:1 (defining bad faith in terms of negligence: "if, for example, they're negligent, but barely so, that would do it on their behalf. If they're very negligent, that would probably be bad faith"); *id.* at 33:11-15 ("if it's clearly negligent and it is at substantial variance with the industry standard… then it might very well be bad faith"). These statements intrude on the judicial role to decide the controlling law and instruct the jury as to that law. Indeed, Quinn often crosses the line and tells the jury "what result to reach." *Specht*, 853 F.2d at 807. While an otherwise qualified expert applying a reliable methodology may opine on the ultimate legal issue in a case, Quinn's expert report and testimony consist mostly of legal conclusions. Such testimony goes beyond being unhelpful to the jury; it would likely confuse the jury as to the applicable legal standards.

Fifth, Quinn's testimony includes much speculation, including concerning Ohio National employees' state of mind, intent, and motives. An expert's testimony may be excluded where it is based on subjective beliefs or unsupported speculation which is no more than *ipse dixit* guesswork. *Gen. Elec. Co. v. Joiner*, 522 U.S. 136, 146 (1997) (holding that trial court may properly exclude *ipse dixit* opinions where "there is simply too great an analytical gap between the data and the opinion proffered"). Quinn's report opines on witness's intent, motives, or state of mind:

- "Ohio National… engaged in an [sic] purposeful and malicious campaign to find any basis to deny Bright further disability benefits without factual support." (Dkt. #91-1 at 8).

- "The claims department concealed this fact it appears…" (*Id.* at 10).

- "Ohio National commenced an 'investigation' specifically designed to support the denial of further disability benefits." (*Id.* at 12).

- "Church purposefully did not go out and gather documents which supported Bright's claim." (*Id.* at 14).

- "[Church] intentionally did not obtain the records of psychiatrists and psychologists." (*Id.*)

- "It appears that [Church] may have destroyed records that supported the claim…" (*Id.*)

- Ohio National "purposefully failing to obtain information that supported Bright's claim." (*Id.* at 17).

- The claims handling "was obviously reckless and in many respects obviously intentional." (*Id.*)

- Ohio National's organizational chart "is highly unusual, mysterious, and suggestive that the company is trying to keep something hidden." (*Id.* at 17-18).

- "Putting part of the claims investigation process in the office of the General Counsel is a thinly veiled attempt to pre-same the involvement of litigation in validly payable claims." (*Id.* at 18).

- "It appears Ohio National is doing everything it can to cheat Jo Lieta Bright out of her disability benefits, to use its financial might to crush the insured, and 'starve her out.'" (*Id.* at 19).

These opinions are inadmissible. And they contribute to the overall unhelpful nature of Quinn's testimony.

Given that other courts have found Quinn's testimony to be "replete with conclusory statements," *Gulf Ins. Co. v. Jones*, 2003 WL 22208551, at *14 (N.D. Tex. Sept. 24, 2003), and to be "nothing more than unsupported legal conclusions," *Republic W. Ins. Co. v. Rockmore*, 2005 WL 57284, at *8 n.8 (N.D. Tex. Jan. 10, 2005), Quinn is aware that such expert opinions are improper. Because Quinn's testimony is in a subspecialty outside his normal expertise, his testimony is riddled with legal conclusions and improper speculation, and his methodology is unreliable at best, Quinn's expert report and testimony is excluded under *Daubert*. Fed. R. Civ. P. 702.

WHEREFORE, defendant's motion to exclude is granted. (Dkt. #91).

DATED this 9th day of January, 2013.

                                          GREGORY K. FRIZZELL, CHIEF JUDGE
                                          UNITED STATES DISTRICT COURT